UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANYA SUE BURNETT,

     Plaintiff,

v.                                                                              Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,                        Case No. 1:19-cv-743

     Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Dept. of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### Procedural Posture

Plaintiff filed an application for SSI on October 6, 2016, alleging that she became disabled on September 1, 2013, due to migraine headaches and bipolar disorder. (PageID.246, 266.) Plaintiff was age 38 at the time she filed her application. (PageID.139.) Plaintiff had a high

school education (PageID.267) and minimal work history (PageID.254). After Plaintiff's application was denied (PageID.150), she requested a hearing before an Administrative Law Judge (ALJ) (PageID.181).

ALJ Christopher Ambrose conducted a hearing on July 26, 2018, and received testimony from Plaintiff and Joanne M. Pfeffer, M.A., an impartial vocational expert. (PageID.75–137.) On September 17, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled from the date she filed her application through the date of the decision. (PageID.46–55.) Plaintiff filed a request for review by the Appeals Council. (PageID.201.) The Appeals Council denied Plaintiff's request for review on August 7, 2019. (PageID.23–27.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on September 11, 2019.

### Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]   1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

    2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

    3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

    4.   If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

    5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since her application date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) bipolar disorder; (2) migraines; (3) lumbar spine degenerative disc disease; (4) bilateral knee degenerative joint disease; and (5) obesity. (PageID.48.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.31–32.) The ALJ considered Listings 1.02 (major dysfunction of a joint, i.e., hip, knee or ankle) and 1.04 (disorders of the spine), as well as Listing 12.04 (affective disorders). (PageID.49–51.) Regarding Listing 12.04, the ALJ considered the four

---

capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

broad areas of mental functioning set out in the "paragraph B" criteria, 20 C.F.R. Pt. 404, Subpt. P, App 1, and found that Plaintiff was moderately limited in the areas of understanding, remembering or applying information, and concentrating, persisting, or maintaining pace. The ALJ found that Plaintiff was mildly limited in the areas of interacting with others and adapting or managing herself. (PageID.50.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she: (1) could not climb ladders, ropes, or scaffolds; (2) could not kneel, crouch, or crawl; (3) could occasionally climb ramps or stairs, balance, or stoop; (4) must avoid all exposure to unprotected heights; and (5) was limited to simple, routine, and repetitive tasks. (PageID.51.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (PageID.53.) At the fifth step, the ALJ determined that a person of Plaintiff's age, education, work experience, and her RFC could perform the jobs of addresser, telephone information clerk, and pari-mutuel ticket checker, 135,500 of which exist in the national economy. (PageID.54.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises two issues in her appeal: (1) whether the ALJ erred in failing to fully evaluate the applicability of the listings applicable to Plaintiff's physical impairments; and (2) whether substantial evidence supports the ALJ's finding that Plaintiff could perform "other work" existing in significant numbers in the national economy.[2]

---

[2] Defendant raises a third issue—whether the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence. The Court's Notice Regarding Consent and

## I.    Listing 1.02(A)

Plaintiff argues that, although the ALJ sufficiently explained why she did not meet the requirements for Listing 12.04, he failed to provide any discussion of listings pertaining to physical impairments, specifically, Listing 1.02(A). To the extent Plaintiff suggests that the ALJ was required to explain in his step three analysis why Listing 1.02(A) did not apply, this argument lacks merit. "A heightened articulation standard is not required at step three so long as the ALJ makes sufficiently clear the reasons for his listing determination, so as to allow meaningful review of his decision." *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, (6th Cir. 2006)). *See also Werkema v. Comm'r of Soc*. Sec., No. 1:13-cv-646, 2014 WL 5035363, at *3–4 (W.D. Mich. Sept. 22, 2014) (concluding that the ALJ's statement that his reasons for finding that the plaintiff did not meet either the "paragraph B" or "paragraph C" criteria would be further explained in his RFC analysis was sufficient to explain his step three findings); *Staggs v. Astrue*, No. 2:09-cv-97, 2011 WL 3444014, at *3 (M.D Tenn. Aug. 8, 2011) (noting that "the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis' or to discuss every single impairment") (quoting *Bledsoe*, 165 F. App'x at 411). Here, the ALJ specifically found that "[t]he claimant's condition does not meet or equal the criteria of Listings 1.02, 1.04 or any other

---

Directing Filing of Briefs (ECF No. 8) specifically required that Plaintiff's brief "contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." Plaintiff did not include a separate Statement of Errors, but instead only delineated two arguments in the Law and Argument section of her brief. While the Court might have gleaned the additional issue from Plaintiff's brief, it is Plaintiff's obligation to identify the issues in contention. Because Plaintiff raised only the two identified issues, the Court deems all other unasserted issues waived. *See Zack v. Comm'r of Soc. Sec.*, No. 1:14-cv-1078, 2016 WL 8671976, at *3 n.1 (W.D. Mich. Feb. 12, 2016), *report and recommendation adopted*, 2016 WL 1055752 (W.D. Mich. Mar. 17, 2016) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010)).

listing." (PageID.50.) The ALJ's reasons for why Plaintiff's impairments did not satisfy the requirements of those listings can be found elsewhere in the ALJ's decision.

Plaintiff argues that the ALJ committed reversible error in failing to find that her impairment meets or equals the requirements of Listing 1.02(A). (ECF No. 10 at PageID.604–06.) At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). An impairment that meets only some of the requirements of a listing does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

To meet this listing, Plaintiff had to show that she suffers from a major dysfunction of one or more joints, resulting from any condition that is

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, App. 1 § 1.02(A). In turn, Listing 1.00B.2.b explains effective ambulation:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the

7

individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B.2.b.(1) and (2).[3]

Plaintiff fails to sustain her burden of demonstrating that her knee impairments meet or equal Listing 1.02(A). This listing requires the presence of a "gross anatomical deformity," but Plaintiff fails to identify such evidence in the record. In his step two analysis, the ALJ recognized that Plaintiff reported chronic knee pain, had decreased range of motion of the left knee in December 2016, and had an abnormal gait due to pain and positive straight leg raise on the right in April 2017. (PageID.48–49.) The ALJ also noted that physical consultative examiner Srinivasa Madireddy, M.D., reported that Plaintiff's gait was variable secondary to her valgus deformities in both knees and moderate and antalgic with the use of a cane in her right hand. (PageID.49.) The ALJ also noted that June 2018 x-rays of Plaintiff's left and right knees revealed moderate osteoarthritis with mild to moderate medial joint space narrowing.

---

[3] In her argument, Plaintiff mixes and matches evidence pertaining to her lumbar spine degenerative disc disease impairment and her bilateral knee degenerative joint disease impairment as pertaining to Listing 1.02(A). As noted above, Listing 1.02(A) involves weight-bearing joints (hip, knee, and ankle). Evidence pertaining to Plaintiff's lumbar spine impairment would be relevant to Listing 1.04(A) (disorders of the spine), which Plaintiff does not address.

(PageID.49, 548, 550.) The ALJ properly found that such evidence fails to show that Plaintiff meets or equals Listing 1.02(A).

Plaintiff also fails to show that she is unable ambulate effectively. Although Plaintiff testified at the hearing that she requires the use of a cane at all times (PageID.88), Listing 1.00B.2.b.(1) requires that use of a hand-held assistive device, such as a cane, "limit the functioning of both upper extremities." Examples include, among other things, "use of a walker, two crutches or two canes." As noted in *Mason v. Berryhill*, No. 4:18CV865, 2019 WL 2465316, at *21 (N.D. Ohio Mar. 3, 2019), *report and recommendation adopted*, 2019 WL 3797930 (N.D. Ohio Aug. 13, 2019), "district courts within this Circuit have consistently found that use of a single cane or crutch does not establish an inability to walk effectively for the purposes of Listing 1.02(A), 1.03, and 1.04C." *See also Jackson v. Comm'r of Soc. Sec.*, No. 07-14184, 2009 WL 612343, at *3 (E.D. Mich. Mar. 6, 2009) (noting that the "use of a single cane" does not demonstrate an inability to ambulate effectively under Listing 1.00B.2.b.(1) and (2)). The ALJ also cited Plaintiff's testimony that she is able to take public transportation and to shop alone at the grocery store, which demonstrates that Plaintiff was able to ambulate effectively. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B.2.b.(2) (citing "the inability to use standard public transportation" and "the inability to carry out routine ambulatory activities, such as shopping," as examples of ineffective ambulation). While Dr. Madireddy stated that Plaintiff could not walk without the use of a cane (PageID.483), he did not indicate that Plaintiff could not ambulate effectively when using a cane.

Accordingly, this claim of error is rejected.

**II.      ALJ's Determination that Plaintiff Could Perform Other Work**

Plaintiff argues that remand is required because the ALJ's step five finding was not supported by substantial evidence. That is, Plaintiff argues that the ALJ's hypothetical question to the vocational expert was inaccurate because it failed to include additional limitations, such as a need to use a cane or an inability to walk combined with shoulder problems. (ECF No. 10 at PageID.607.)

An ALJ may satisfy his burden at step five through the use of hypothetical questions posed to a vocational expert, so long as the questions accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). However, it is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x. 706, 715 (6th Cir. 2013) ("An ALJ is only required to incorporate into a hypothetical question those limitations he finds credible."); *Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x. 429, 438 (6th Cir. 2010) (noting that "it is . . . 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact'") (quoting *Casey*, 987 F.2d at 1235). The hypothetical question the ALJ posed to the vocational expert was accurate and was not required to include other limitations that the ALJ found unsubstantiated. (PageID.132–33.)

Because Plaintiff demonstrates no error, this claim is rejected.

**Conclusion**

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: October 29, 2020                                    /s/ Sally J. Berens
                                                             SALLY J. BERENS
                                                             U.S. Magistrate Judge